**Scott DALLAS, et al.**

v.

**GENERAL MOTORS CORPORATION.**

**Civ. No. A–87–CA–172.**

United States District Court,
W.D. Texas,
Austin Division.

Sept. 22, 1989.

Gerry Galow, Kirk Watson, Mack Kidd, Jody Helman, Kidd, Whitehurst, Harkness & Watson, Graves, Dougherty, Hearon & Moody, Austin, Tex., for Scott Dallas.

Gary Garfield, Thomas Fennell, Rick Harrison, Jones, Day, Reavis & Pogue, Dallas, Tex., for General Motors Corp.

ORDER

NOWLIN, District Judge.

Before the Court is the Motion of Defendant, General Motors Corporation for Partial Summary Judgment seeking a dismissal of Plaintiff's design defect claim on the basis that it is both expressly and impliedly

preempted by the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381, et seq., and the Federal Motor Vehicle Safety Standard, FMVSS 208. 49 C.F.R. 571.208 (1979).

The Court may only grant summary judgment under Federal Rule of Civil Procedure 56(c) if the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.1980). Applying the above standard, the Court is of the following opinion.

## I. FINDINGS OF FACT

The Court finds that the following facts are not in dispute. On December 13, 1980, Plaintiff, Scott S. Dallas was involved in an accident while riding in the front seat of a 1980 Oldsmobile Omega, manufactured by Defendant, General Motors Corporation ("General Motors"). While driving on Highway 290 outside Giddings, Texas, the Omega smashed head-on into an oncoming car. Scott Dallas alleges serious injuries from the collision. Plaintiff sued General Motors under a strict liability cause of action, claiming that the General Motors design choice did not include injury reducing safety devices that were then available and within the state of the art of automotive safety design. Specifically, Plaintiff claims that the Omega was defective because it was equipped with manual seat belts rather than a passive restraint system (airbags).

## II. CONCLUSIONS OF LAW

General Motors argues that Plaintiff's design defect claim is preempted by Section 1392(d) of the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1392(d) (the "Safety Act"). Section 1392(d) provides:

Whenever a Federal Motor vehicle safety standard established under this subchap-

ter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard. Nothing in this section shall be construed to prevent the Federal government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard. 15 U.S.C. § 1392(d).

General Motors argues that the Safety Act preempts any safety standard, including a rule of common law, that is not "identical" to the safety standards of the Safety Act, which at the time, authorized manufacturer's to install seatbelts instead of airbags.

The Safety Act, however, also contains a "savings" clause, which provides:

Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law. 15 U.S.C. § 1397(c). Dallas argues that this clause authorizes the prosecution of "any" common law claims, including those that might establish a rule not identical to the Safety Act's standards.

The issue before the Court is whether a product liability claim alleging improper design, seeking to hold an automotive manufacturer liable for failing to adopt a standard "not identical" to a federal safety standard is preempted by section 1392(d) or preserved by 1397(c).

Congress may preempt state law in one of three ways: (1) expressly; (2) by occupying the field; or (3) to the extent state law

conflicts with the accomplishment of Congress' full purposes. *Michigan Canners & Freezers Ass'n v. Agricultural Mktg. & Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2522, 81 L.Ed.2d 399 (1984). General Motors argues that Dallas' claim is preempted both expressly by section 1392(d) and impliedly because it conflicts with the accomplishment of Congress' full purposes.

## A. DEFENDANT'S EXPRESS PREEMPTION ARGUMENT

■ The Court first takes note of the important fact that a strong presumption exists against finding express preemption when the subject matter, such as common law remedies for compensating tort victims, is one that has been traditionally regarded as properly within the scope of the states' rights. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Nevertheless, preemption is possible if it is determined that Congress so intended. *Id.* The issue then is one of Congressional intent. *Id.*

General Motors argues that Plaintiff's claim is expressly preempted by section 1392(d) and FMVSS 208. In 1980, when the Omega was built, the FMVSS 208 permitted compliance with the Safety Act in one of three ways: (1) passive restraints for front and lateral crashes; (2) passive restraints for front crashes plus lap belts for side crashes and rollovers; or (3) manual seat belts. 49 C.F.R. § 571.208, § 4.2.2 (1979). It is uncontroverted that General Motors complied with the third option by installing manual seat belts in the Omega.

General Motors argues that a successful airbag claim would create a state safety standard not identical to FMVSS 208 by taking away the federally created option to install seat belts and in effect requiring manufacturers to install airbags. This nonidentical standard, General Motors argues, applies to the "same aspect of performance" as FMVSS 208 and would be expressly preempted by section 1392(d). Dallas argues that preempting his theory of liability would effectively exempt General Motors from liability and that Congress has expressly forbidden such a result in section 1397(c), which provides that "compliance with *any* Federal motor vehicle safety standard ... does not exempt *any* person from *any* liability under common law." 15 U.S.C. § 1397(c).

The Court finds that there is an inherent ambiguity in the Safety Act due to the conflict between section 1392(d), which preempts all non-identical state safety standards and section 1397(c), which appears to preserve common law causes of action even though they would effectively create a safety standard that is not identical to the federal standard.[1]

General Motors would have the Court resolve this conflict by finding that Plaintiff's common law claim is expressly preempted by the language in section 1392(d) which preempts "any" state safety standard not identical to the federal standard, including Plaintiff's common law design defect claim. However, nowhere in section 1392(d) does the Safety Act ever specifically state that non-identical rules of common law are preempted. On the contrary, the broad language of section 1397(c)

---

**1.** The Court finds that Plaintiff's common law claim would indeed create a non-identical state safety standard with the same effect as a state regulation requiring the installation of airbags. *See e.g. San Diego Building Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Wood v. General Motors Corp.*, 865 F.2d 395, 403 (1st Cir.1988) (citing *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987)); *International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987); *Taylor v. General Motors Corp.*, 875 F.2d 816, 824, n. 16 (11th Cir.1989). The Court also finds that this standard would apply to the "same aspect of performance" as FMVSS 208, which the Court concludes contains aspects of design sufficient to cover Plaintiff's design defect claim. *See Wood*, 865 F.2d at 417. Moreover, section 1392(d) preempts "any" safety standard (including design standards) applicable to the same aspect of performance as FMVSS 208. An airbag design standard is unquestionably related to the same aspect of performance as FMVSS 208. *Id.* The Court, thus, rejects the argument that a state common law claim would not have the same effect as a state regulation requiring airbags, as well as the proposition that such a state common law standard does not apply to the "same aspect of performance" as FMVSS 208.

appears to preserve such common law rules.

Congress knows how to preempt common law rules if it so desires. *See Taylor v. General Motors*, 875 F.2d 816, 824 (11th Cir.1989) (citing Domestic Housing and International Recovery and Financial Stability Act, 12 U.S.C. §§ 1715z–17(d), 1715z–18(e) (Supp. V 1987) (preempting any "State constitution, statute, court decree, common law, rule, or public policy"); Copyright Act of 1976, 17 U.S.C. § 301(a) (1982) (preempting rights "under the common law or statutes of any State"); Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), (c)(1) (1982) (preempting all state "laws, decisions, rules, regulations, or other state action having the effect of law")). Congress' failure to specifically preempt common law causes of action in section 1392(d) militates against a finding that Congress intended to expressly preempt non-identical common law rules. *Id.*

This Court is reluctant to speculate as to why Congress did not expressly preempt state common law claims in section 1392(d) because it is difficult to derive Congressional intent from Congressional silence. Nevertheless, at least one Court has found that this silence was due to Congress' inability to foresee in 1966, when the Safety Act was promulgated, that state common law claims would effectively create state safety standards not identical to the federal safety standards. *See Wood v. General Motors Corp.*, 865 F.2d 395, 404–05. This Court will not make a judicial finding as to what Congress could or could not anticipate in 1966. Nevertheless, considering the failure of Congress to specifically preempt non-identical common law rules in section 1392(d), and because of the direct conflict between 1392(d) and 1397(c), this Court cannot find that Plaintiff's design defect claim is expressly preempted.

Dallas would have the Court resolve the conflict between section 1392(d) and section 1397(c) by finding that Congress intended to preempt all non-identical state safety standards except those created by common law. This would ascribe to Congress an intent to create a "tension" between the federal safety standards and the non-identical state common law standards even though Congress expressly forbade the states from creating such a standard by statute or regulation. The Court, however, is not persuaded that Congress would have intended to allow state common law rules that would have the same effect as a forbidden statute regulation.[2] The Court, thus, rejects Plaintiff's argument on this point.

## B. DEFENDANT'S IMPLIED PREEMPTION ARGUMENT

■ General Motors argues that Plaintiff's design defect claim is also impliedly preempted because it stands as an obstacle to the accomplishment of the full purposes of the Safety Act. *See Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). In contrast to the presumption against a finding of express preemption, there is no presumption against a finding of implied preemption. *Taylor v. General Motors Corp.*, 875 F.2d 816, 826 (11th Cir.1989) (*quoting Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988) (" '[T]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield' ") (quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962))).

A state statute or rule of common law may be preempted where the state rule interferes with the methods established by Congress to achieve its goals even where

**2.** The Court is persuaded by the First Circuit's interpretation of the holding of *Silkwood v. Kerr–McGee*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1983). *See Wood v. General Motors Corp.*, 865 F.2d 395, 413 (1st Cir.1988) ("The Supreme Court in *Silkwood* did not lay down

some kind of general rule that 'tension' between federal regulation and clashing state product liability law is generally favored. *Silkwood* merely held, on its own facts, that such tension was there envisaged by Congress").

the state and federal goals are the same. *See International Paper Co. v. Ouellette,* 479 U.S. 481, 494, 107 S.Ct. 805, 813, 93 L.Ed.2d 883 (1987) (citing *Michigan Canners & Freezers Association v. Agricultural Marketing & Bargaining Board,* 467 U.S. 461, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984)). In the instant case, it is the goal of both Plaintiff's design defect claim and the Safety Act to increase automobile safety. Nevertheless, Plaintiff's design defect claim would establish a method of achieving that goal that is contrary to the method established by Congress in the Safety Act.

When FMVSS 208 was promulgated, Congress determined that the purposes of the Safety Act could be accomplished in one of three ways. Manufacturers could comply with FMVSS 208 by installing: (1) passive restraints for front and lateral crashes; (2) passive restraints for front crashes plus lap belts for side crashes and crashes; or (3) manual seat belts. 49 C.F.R. § 571.208, S4.2.2 (1979). Plaintiff's design defect claim, if successful, would have the effect of establishing a more stringent standard than that intended by Congress by requiring the mandatory installation of airbags. This in effect would interfere with the method chosen by Congress to achieve the purpose of the Safety Act.[3] Whatever Congress had in mind when it gave manufacturers these lenient options, the states cannot interfere with Congress' chosen method of accomplishing the purposes of the Safety Act. *Ouellette,* 479 U.S. at 494, 107 S.Ct. at 813. Plaintiff's design defect is, thus, impliedly preempted.

Moreover, a state rule of common law that punishes or prohibits the exercise of a federally created option is preempted by federal law. *Chicago & N.W. Transport Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981); *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Taylor v. General Motors Corp.,* 875 F.2d 816, 827 (11th Cir.1989). In *de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), a federal regulation permitted federal savings and loan associations at their option to include a due-on-sale clause in loan instruments, and the defendant federal savings and loan association exercised its option to include the clause. Plaintiff borrowers sued the association for damages, and claimed the due-on-sale clause in their loan instrument was unenforceable under a rule of California common law. The Supreme Court held that the federal regulation preempted the California common law because the common law rule prohibited the exercise of the federally authorized option.

In accordance with *de la Cuesta* and *Ouellette* the Court finds that a state common law rule requiring the mandatory installation of airbags would in effect, remove the element of choice authorized in FMVSS 208 and interfere with Congress' chosen method for accomplishing the purposes of the Safety Act. The Court, thus, holds that Plaintiff's design defect claim is impliedly preempted by FMVSS 208 and the Safety Act.[4]

ACCORDINGLY, IT IS ORDERED that Defendant, General Motor's Motion For Partial Summary Judgment is GRANTED, and Plaintiff, Scott Dallas' passive restraint design defect claim is DISMISSED.

---

3. The Court also rejects Plaintiff's argument that a higher standard would not be inconsistent with the federal standard, and that compliance with the minimum federal standard is not a defense to a state common law tort claim. This is not a case where compliance is pleaded as a defense to a tort claim, but rather where the federal law preempts conflicting state law, regardless of whether it imposes a higher or a lower standard. *See Wood v. General Motors Corp.* 865 F.2d 395, 401, n. 14 (1st Cir.1988).

4. The Court has already rejected the proposition that Congress intended through the savings clause, section 1397(c), to preserve common law claims even though they would effectively create a standard that is not identical to FMVSS 208, and, thus, also rejects the argument that the savings clause precludes a finding of implied preemption.