Mary WILSON, Individually and as Administrator of the Estate of James Darryl Wilson, Deceased, et al., Appellants–Plaintiffs,

v.

William G. PLEASANT, Jr. and General Motors Corporation, Appellees–Defendants.

No. 64A03–9303–CV–00083.

Court of Appeals of Indiana, Third District.

Dec. 29, 1994.

James W. Myers, III, Valparaiso and David H. Knobel, Merrillville, for appellants.

Eric L. Kirschner, Beckman, Kelly & Smith, Hammond, Alex Dimitrief, Kirkland & Ellis, Chicago, IL, and David M. Heilbron and Leslie G. Landau, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for appellees.

## OPINION

HOFFMAN, Judge.

Appellants-plaintiffs Mary Wilson, individually and as Administrator of the Estate of James Darryl Wilson deceased, et al., appeal from an entry of summary judgment in favor of appellee-defendant General Motors Corporation ("G.M.") in a wrongful death action.

On November 10, 1988, James D. Wilson was involved in a car accident while driving a 1986 Chevrolet Sprint manufactured by G.M. James was driving the Sprint northbound on Broadway in Gary, Indiana, when a car driven by William Pleasant crossed the center line and hit the Sprint head on. James, who was not wearing his seat belt, died at the scene of the accident.

The Sprint was equipped with three-point manual lap and shoulder harness safety belts in the front outside seating position and with warnings, including a dashboard light and buzzer, designed to encourage seat belt use. The belt restraint system fully met the requirements of the applicable federal regulation, Federal Motor Vehicle Safety Standard 208 (FMVSS 208).

On November 9, 1990, James's estate and various other individuals (collectively referred to as "Wilson") brought this action against Pleasant and G.M. Counts VI through XV of the complaint alleged that G.M. was negligent in designing, manufacturing, and selling a vehicle which was not crashworthy and under a strict products liability theory claimed that the Sprint was defective in its design. Thereafter, Wilson filed an amended complaint. G.M. filed its answer and affirmative defenses.

On April 19, 1991, G.M. filed a motion for summary judgment on the grounds that Wilson's passive restraint claims were preempted by the Federal National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381–1431 (hereinafter referred to as the "Safety Act") and by the safety standards promulgated under the act, in particular FMVSS 208. After a hearing, the trial court entered an order on November 2, 1992, granting G.M.'s motion for summary judgment on the alternate grounds that Wilson's claims were expressly and implied preempted, thus, dismissing Wilson's claim against G.M., Counts VI–XV. Wilson now appeals.

■ In reviewing a motion for summary judgment, this Court stands in the shoes of the trial court. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *State Bd. of Tax Com'rs v. New Energy Co.* (1992), Ind. App., 585 N.E.2d 38, 39, *trans. denied.* The instant case involves no factual dispute.

The sole issue presented for review is a pure question of law: whether the Safety Act preempts a state common-law tort action against G.M. under a crashworthiness theory based on failure to install a passive restraint system in a vehicle which G.M. manufactured in the 1986 model year.

. Wilson contends, in part, that G.M.'s failure to employ a different option allowed by FMVSS 208—i.e., airbags—was negligent and that the failure renders the 1986 Sprint's design defective and unreasonably dangerous. G.M. responds that Wilson's common-law claim impermissibly narrows FMVSS 208's list of passenger restraint alternatives and, therefore, violates the United States Constitution's Supremacy clause.

In 1966, Congress passed the Safety Act "to reduce traffic accidents and death and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381. To achieve this purpose, it mandated the United States Secretary of Transportation to promulgate mandatory, national motor vehicle standards for all new motor vehicles. 15 U.S.C. § 1392(a). Among those standards pertaining to the 1986 Sprint Chevrolet was FMVSS 208, which required manufacturers to choose one of three safety systems options: (1) complete passive restraint systems (e.g., automatic seat belts with or without air bags); (2) passive restraint systems to protect against frontal crashes (e.g., air bags) plus lap belts for lateral crashes and roll overs with a warning system to remind occupants to fasten their seat belts; or (3) manual three-point seat belts and a belt warning system. 49 C.F.R. § 571.208 S4.1.2.1–S4.1.2.3.

■ The Safety Act contains two provisions which are relevant to our review. First, the "preemption clause" provides:

"Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard."

15 U.S.C. § 1392(d). This section is based upon the need for "uniformity" in vehicle performance standards, so that the manufacturers will not be faced with "a multiplicity of diverse standards." See H.R.Rep. 89–1776, 89th Cong., 2d Sess. 17 (1966). In contrast, the "saving clause" provides:

"Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from liability under common law."

15 U.S.C. § 1397(k).

■ Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, it is well settled that state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.* (1992), — U.S. —, —, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422. Federal regulations have no less of a preemptive effect than federal statute. *Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675. The question of whether federal statutes or regulations preempt state law is essentially a question of congressional intent. *California Fed. Sav. & Loan Ass'n v. Guerra* (1987), 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623.

■ Federal law may preempt in three ways: First, state law is expressly preempted when the federal law explicitly states an intention to preempt state law; second, preemption may be implied when the wording of the statute or its legislative history may evidence Congress's intent to occupy a given field; third, preemption may be implied when the state law actually conflicts with the federal law. *Heath v. General Motors Corp.* (S.D.Ind.1991), 756 F.Supp. 1144, 1146 (*citing Schneidewind v. ANR Pipeline Co.* (1988), 485 U.S. 293, 299–300, 108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316. Only a small number of courts have concluded that the preemption clause explicitly preempts passive restraint claims. *See e.g. Montag v. Farmers Ins. Exchange* (D.Colo.1994), 856 F.Supp. 574,

576; *Wattelet v. Toyota Motor Corp.* (D.Mont.1987), 676 F.Supp. 1039, 1040; *Cox v. Baltimore County* (D.Md.1986), 646 F.Supp. 761, 763; *Vanover v. Ford Motor Company* (E.D.Mo.1986), 632 F.Supp. 1095, 1096–97; *Wickstrom v. Maplewood Toyota Inc.* (1987), Minn.App., 416 N.W.2d 838, 840, *cert. denied* (1988), 487 U.S. 1236, 108 S.Ct. 2905, 101 L.Ed.2d 937. Most courts, however, including the Southern District of Indiana, "have found passive restraint claims *not* expressly preempted, because the preemption clause does not explicitly mention common law, and because the savings clause, when considered in connection with the preemption clause, makes ambiguous Congress's intent with respect to the preemption of state common law claims." *See Heath,* 756 F.Supp. at 1147 (Citations omitted.). We agree with Judge Barker's observation in *Heath;* the Safety Act neither expresses an unambiguous intent to preempt state common-law passive restraint claims nor does it unambiguously express an intent to preserve such claims. *Id.* Wilson's claims are not expressly preempted by the Safety Act.

■ Although most courts agree that the Safety Act does not expressly preempt passive restraint claims, the majority of courts have determined that the Safety Act and the regulations promulgated under it impliedly preempt passive restraint claims. Implied preemption of passive restraint claims is not a matter of Congress's intent to occupy a given field; rather, preemption is implied because the imposition of state common-law liability actually conflicts with the federal law. This is so because a common-law judgment would have the effect of forcing manufacturers to comply with a *de facto* standard in conflict with FMVSS 208, which gives manufacturers the option of installing either passive restraint systems, including automatic safety belts and air bags, or manual three-point safety belts systems. *See e.g. Pokorny v. Ford Motor Co.,* (3d Cir.1990), 902 F.2d 1116, *cert. denied* (1990), 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113; *Taylor v. General Motors Corp.* (11th Cir.1989), 875 F.2d

816, *cert. denied* (1990), 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783, rejected in *Myrick v. Freuhauf Corp.* (11th Cir.1994), 13 F.3d 1516, *cert. granted opinion pending* (1994) — U.S. —, 115 S.Ct. 306, 130 L.Ed.2d 218;[1] *Kitts v. General Motors Corp.* (10th Cir.1989), 875 F.2d 787, *cert. denied* (1990), 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783; *Wood v. General Motors* (1st Cir.1988), 865 F.2d 395, *cert. denied* (1990), 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782; *Gills v. Ford Motor Co.* (W.D.Ky.1993), 829 F.Supp. 894; *Heath v. General Motors Corp.* (S.D.Ind.1991), 756 F.Supp. 1144; *Dallas v. General Motors Corp.* (W.D.Tex.1989), 725 F.Supp. 902; *Staggs v. Chrysler Corp.* (N.D.Ga.1987), 678 F.Supp. 270; *Schick v. Chrysler Corp.* (D.S.D.1987), 675 F.Supp. 1183; *Baird v. General Motors Corp.* (N.D.Ohio 1986), 654 F.Supp. 28; *Marrs v. Ford Motor Co.* (1993), Tex.App., 852 S.W.2d 570; *Boyle v. Chrysler Corp.* (1993), 177 Wis.2d 207, 501 N.W.2d 865, *review denied* (1993), Wis., 510 N.W.2d 137. (explicit and implicit preemption).

■ State common-law may conflict with federal law just the same as state statutory law. The United States Supreme Court has long recognized that "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensatory damages can be, indeed is designed to be, a potent method of governing and controlling policy." *Cipollone,* — U.S. at —, 112 S.Ct. at 2620, 120 L.Ed.2d at 426, *quoting San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775.

■ The conflict between possible common-law liability for failure to install passive restraint systems and the federal regulatory framework becomes clearer when 15 U.S.C. § 1410b is considered. *Pokorny,* 902 F.2d at 1123. In relevant part, § 1410b provides:

"(2) Except as otherwise provided in paragraph (3), no Federal motor vehicle safety

---

1. On October 7, 1994, the United States Supreme Court granted a petition for *writ of cert.* to review *Myrick v. Freuhauf* (11th Cir.1994), 13 F.3d 1516. *See Freightliner Corp., et al. v. Myrick,* *Ben, Et Ux., et al.* (1994), — U.S. —, 115 S.Ct. 306, 130 L.Ed.2d 218. Briefing is not scheduled for completion until December 29, 1994.

standard respecting occupant restraint systems may

(A) have the effect of requiring, or

(B) provide that a manufacturer is permitted to comply with such standard by means of, an occupant restraint system other than a belt system.

(3)(A) Paragraph (2) shall not apply to a Federal motor vehicle safety standard which provides that a manufacturer is permitted to comply with such standard by equipping motor vehicles manufactured by him with either—

(i) a belt system, or

(ii) any other occupant restraint system specified in such standard."

15 U.S.C. § 1410b. Section § 1410b reflects Congress's intent, at the time when the Sprint was manufactured in 1986, that manual seat belts were to remain an option. *Pokorny*, 902 F.2d at 1124. Allowing Wilson to maintain a defective design claim against G.M. for failure to install passive restraints would directly undermine the regulatory framework suggested by Congress in § 1410b and implemented by the Department of Transportation in FMVSS 208. *See id.* Further, a general saving clause such as "§ 1397(k) does not 'save' common law actions that would subvert a federal statutory scheme." *Id.* at 1125.

Wilson asserts that the recent decision of the United States Supreme Court in *Cipollone v. Liggett Group, Inc.* (1992), —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407, prevents any inquiry into implied preemption. In effect, Wilson argues that after the decision in *Cipollone,* courts are now prohibited from engaging in an implied preemption analysis whenever the statute under review contains an express preemption clause.

▪ In *Cipollone,* the court stated that where a federal statute contains an express preemption clause and that clause provides a "reliable indicium of congressional intent with respect to state authority," a court should not consider implied theories of preemption. *Id.* at ——, 112 S.Ct. at 2618, 120 L.Ed.2d at 423. However, nothing in the *Cipollone* decision mandates that implied preemption is no longer viable in light of an express preemption clause. *See Myrick v. Freuhauf Corp.* (11th Cir.1994), 13 F.3d 1516, 1189 (Hill, S.J., dissenting).

As recently recognized in *Gills v. Ford Motor Co.* (W.D.Ky.1993), 829 F.Supp. 894, the Supreme Court's preemption discussion in *Cipollone* broke no new ground:

"[i]t had long been the law that '[a] preemption question requires an examination of congressional intent,' and the presence of an express preemption clause declaring the boundaries of Congress's preemptive intent would naturally leave courts less room to proceed to an implied preemption analysis. The mere presence of express preemption language does not necessarily prohibit an implied preemption analysis under the *Cipollone* rule however. *Cipollone* would accord conclusive weight to an express clause if that clause provides 'a reliable indicium of congressional intent with respect to state authority.' A court may therefore search a statute for implied preemptive intent if that statute's express language fails to provide a 'reliable indicium' of the legislature's preemptive wishes."

*Id.* at 897–98 (Citations omitted.). In the present case, the Safety Act's express preemption clause fails to provide a "reliable indicium" of the Congress's intent. Thus, there is nothing in the *Cipollone* decision which prohibits this Court from concluding that the Safety Act impliedly preempted Wilson's passive restraint claims. *See Gills,* 829 F.Supp. at 897–98. Further, if G.M. were to be held liable for making a choice among the very options allowed by the federal regulations, the Safety Act would have little purpose. In effect, automobile manufacturers would be required to comply with different safety standards in each state.

G.M.'s motion for summary judgment was properly granted. The judgment of the trial court is affirmed.

Affirmed.

GARRARD and NAJAM, JJ., concur.