**Jackie D. GILLS, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Action No. C91–0256–P(H).**

United States District Court,
W.D. Kentucky,
at Paducah.

Sept. 1, 1993.

Charles D. Saladino, Paducah, KY, Robert M.N. Palmer, Springfield, MO, for plaintiff.

Peter N. Tassie, William D. Grubbs, Woodward, Hobson & Fulton, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Defendant's Motion for Partial Summary Judgment requires this Court to decide whether federal law preempts a Kentucky common law claim seeking damages for Defendant's failure to install airbags in a 1988 automobile. The excellent briefs on both sides made it no less difficult for the Court to bring clarity to this well trod yet still murky area of the law. In any event, the Court can now verify first hand the "difficulty lower courts will encounter in attempting to implement the [*Cipollone*] decision"[1] and other decisions considering this issue. Nevertheless, for the reasons set forth herein, the Court will sustain Defendant's Motion and will dismiss part of Plaintiff's claim.

Plaintiff was a passenger in a 1988 Ford Escort which crashed into a culvert. That automobile protected its occupants with a restraint system employing automatic shoulderbelts, manual lapbelts, and warnings reminding occupants to fasten their belts. That system complied with the specifications of Federal Motor Vehicle Safety Standard (FMVSS) 208, which permitted manufacturers of 1988–model automobiles to select any one of three approved options for shielding passengers. 49 C.F.R. § 571.208, S4.1.3.2.1; *Wood v. General Motors Corp.*, 865 F.2d 395, 399 (1st Cir.1988). Plaintiff's lawsuit contends in part that Defendant's failure to employ a different option allowed by Standard 208—airbags—rendered the vehicle's design defective and unreasonably dangerous. Defendant responds that Plaintiff's common law theory impermissibly narrows Standard 208's list of passenger restraint alternatives, and therefore violates the Constitution's Supremacy Clause. U.S. Const. art. VI, cl. 2. If Plaintiff's claim indeed represents "state law that conflicts with federal law," Plaintiff's cause of action is "without effect," *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct.

1. *Cipollone v. Liggett Group, Inc.*, — U.S. —, —, 112 S.Ct. 2608, 2631, 120 L.Ed.2d 407 (1992) (Justice Blackmun, dissent)

2114, 2128–29, 68 L.Ed.2d 576 (1981), and Defendant will be entitled to judgment as a matter of law with respect to Plaintiff's claim.

## I.

Congress authorized the development of Standard 208 and other automobile safety regulations through the National Traffic and Motor Vehicle Safety Act of 1966. 15 U.S.C. § 1392(a) (the "Safety Act"). The Safety Act contains language describing the preemptive scope of those regulations in the following terms:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. . . .

15 U.S.C. § 1392(d). Federal courts interpreting this clause agree that its preemptive language bars the enforcement of state legislative enactments or regulations that conflict with federal safety standards. *See, e.g., Wood,* 865 F.2d at 401.

Those same courts are virtually unanimous in their conclusion that the Safety Act's express preemption clause does *not* prohibit the imposition of contradictory standards under state *common law.* The more recent opinions in this context focus on the Act's "saving clause", which declares that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397. These courts conclude that even if the Act's express preemption of conflicting "safety standards" might include common law complaints in the abstract, the saving clause leaves little doubt that Congress intended to preserve common law liability; to hold otherwise, the opinions contend, would reduce the saving clause to a "mere redundancy." *Taylor v. General Motors Corp.,* 875 F.2d 816, 824 (11th Cir.1989); *see also Pokorny v.*

*Ford Motor Co.,* 902 F.2d 1116, 1120–21 (3rd Cir.1990) *and Baird v. General Motors Corp.,* 654 F.Supp. 28, 30–31 (N.D. Ohio 1986). These courts find additional support for this conclusion in the preemption clause's failure to include language explicitly declaring "common law" to be within the clause's ambit. *Pokorny,* 902 F.2d at 1121; *Taylor,* 875 F.2d at 824–25; *Baird,* 654 F.Supp. at 30.

And yet, no Circuit Court to date has permitted a plaintiff to pursue a design defect claim premised upon a manufacturer's failure to install airbags. This is because the courts have declared, almost with one voice, that the Safety Act *impliedly* preempts such liability, even though its *express* preemption clause may be insufficient to accomplish the task. *See Pokorny,* 902 F.2d at 1118, 1123–25; *Taylor,* 875 F.2d at 827; *Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir. 1989); *and Wood,* 865 F.2d at 402, 411; *see also Baird,* 654 F.Supp. at 32. The appellate courts note that the imposition of liability despite a manufacturer's compliance with federal standards would "directly undermine the regulatory framework" contained in the Safety Act, *Pokorny,* 902 F.2d at 1124; would "take away the flexibility provided by a federal regulation", and would thereby "frustrate the federal regulatory scheme", *Taylor,* 875 F.2d at 827; and would be "tantamount to establishing a conflicting safety standard that necessarily encroaches upon the goal of uniformity specifically set forth by Congress", *Wood,* 865 F.2d at 402.

The Sixth Circuit has had at least one opportunity to consider the interplay between that Act and common law design liability, but it has not yet determined the precise reaches of the Safety Act's preemptive scope. In *Sours v. General Motors Corp.,* 717 F.2d 1511 (6th Cir., 1983), the Sixth Circuit held that the defendant automaker's compliance with Standard 216, which sets out the "minimum level of roof strength" for automobiles, did not immunize the manufacturer from common law liability for defective roof design. *Id.* at 1517. The court declared that the safety regulation at issue in *Sours* "did no more than establish a minimum standard" for roof design, and did "not purport to re-

lieve the complying manufacturer of common law liability...." *Id.* The Sixth Circuit did suggest, however, that its analysis might change if a plaintiff's lawsuit were to challenge a manufacturer's "utilization of officially approved design features," which the court described as "far different from compliance with the threshold FMVSS 216 standard, which by its terms sets only a minimum level of roof strength...." *Id.*

The regulation at issue in this lawsuit closely resembles the hypothetical "officially approved design features" regulation contemplated by the court in *Sours:* Standard 208 sets forth three alternative types of automobile passenger restraint systems, and requires manufacturers to "incorporate[ ] one of these 'acceptable' mechanisms" into their vehicle designs. *Id.* Were it to confront the question at issue here, the Sixth Circuit might well focus on Standard 208's unique characteristics and agree with the Eleventh Circuit's statement that "a state common law rule cannot take away the flexibility provided by a federal regulation, and cannot prohibit the exercise of a federally granted option." *Taylor,* 875 F.2d at 827 (interpreting *Fidelity Fed. Sav. & Loan Assoc. v. de la Cuesta,* 458 U.S. 141, 155, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982)). In this Court's view the distinction which the Sixth Circuit has foreshadowed and which the Eleventh Circuit has adopted is a reasonable one.

## II.

Where several Circuit Courts have reached a unanimous judgment after extensive, diligent investigations; where no available opinions suggest that a different result would be appropriate in the Sixth Circuit; and where Plaintiff presents no compelling reasons to find that the prevailing trend among the Circuit Courts is legally infirm or constitutes unwise policy: logic suggests that this Court should align itself with the dominant view that Standard 208 adopted pursuant to the Safety Act preempts Plaintiff's cause of action. But Plaintiff argues that the Supreme Court recently foreclosed such a conclusion with the rule announced in *Cipollone v. Liggett Group, Inc.,* ― U.S. ―, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

Plaintiff contends, first, that *Cipollone* prohibits courts from engaging in an implied preemption analysis whenever the statute under review contains an express preemption clause. Plaintiff proceeds to note that the Circuit Courts have collectively determined that the Safety Act's express preemption clause does not bar common law claims such as the one Plaintiff advances in this action. Plaintiff therefore concludes that this Court cannot properly declare his cause of action to be preempted, even though an implied preemption analysis, were it available, might mandate such a result.

The *Cipollone* rule does indeed warn courts against passing too lightly over an express preemption clause in favor of an implied preemption review. As the Supreme Court declared,

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision expressly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation. Such reasoning is a variant of the familiar principle of *expression unius est exclusion alterius:* Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.

*Cipollone,* ― U.S. at ―, 112 S.Ct. at 2618 (citations and internal quotations omitted). The Supreme Court broke no new ground with that discussion, however. It had long been the law that "[a] preemption question requires an examination of congressional intent," *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988), and the presence of an express preemption clause declaring the boundaries of Congress's preemptive intent would naturally leave courts less room to proceed to an implied preemption analysis. The mere presence of express preemption language does not necessarily prohibit an implied preemption analysis under the *Cipollone* rule, however. *Cipollone* would accord conclusive weight to an express clause *if* that

clause provides a "reliable indicium of congressional intent with respect to state authority." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618. A court may therefore search a statute for implied preemptive intent if that statute's express language fails to provide a "reliable indicium" of the legislature's preemptive wishes. *Toy Mfrs. of Am., Inc. v. Blumenthal,* 986 F.2d 615, 623 (2nd Cir. 1992).[2]

■ Consequently, nothing in *Cipollone* causes this Court to doubt its own reasoning or that contained in the appellate decisions discussing the Safety Act's preemptive scope. Those courts, after careful and thorough reviews, concluded that the Act's express preemption clause was "facially ambiguous as to Congress's intent" *before* they resorted to an implied preemption analysis. *Wood,* 865 F.2d at 401; *see also Taylor,* 875 F.2d at 825, n. 18.[3] This Court agrees with that analysis. This Court's own reference to and disposition of the Safety Act's express preemption clause prior to conducting its implied preemption review fully comports with the teaching of *Cipollone.* This Court therefore concludes that the many appellate rulings using the implied preemption analysis do not violate the principles stated by *Cipollone.*

Moreover, it seems quite plausible that Congress intended § 1392(d)'s language preempting "any safety standard" to apply not only to statutes and regulations but to

conflicting common law standards as well. It was settled law by 1966 that awards of damages under a state's common law may constitute state regulation, and may therefore fall within the ambit of an express preemption clause. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2620 (citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780–81, 3 L.Ed.2d 775 (1959).[4] Congress' failure to include the words "common law" in its express preemption clause— an omission accorded great significance by the courts in *Taylor* and *Pokorny*—does not necessarily mean that Congress intended to permit common law causes of action. Since a state may "establish ... [a] safety standard" by common law just as effectively as by statute, it seems more logically consistent to interpret § 1392(d) to reach both modes of regulation. It would be odd indeed that Congress would intentionally permit common law litigation to "arrogate[ ] to a single jury the regulatory power explicitly denied to all fifty states' legislative bodies." *Wood,* 865 F.2d at 410 (citing *Palmer v. Liggett Group,* 825 F.2d 620, 628 (1st Cir.1987)).

Nor does finding an express or implied preemption reduce the Safety Act's saving clause to a mere redundancy. This Court reads the saving clause as the reasonable attempt by Congress to preserve all other liability claims except those otherwise abolished by the preemption clause and covered

---

**2.** No consensus has emerged among the Circuit Courts regarding the extent to which an express preemption clause forecloses an implied preemption analysis under the *Cipollone* rule, however. Compare, for example, the view stated by the Second Circuit in *Blumenthal* with the stricter formula announced by the Seventh Circuit in *American Agric. Movement v. Board of Trade,* 977 F.2d 1147, 1154 (7th Cir.1992) (implied preemption permitted by *Cipollone* rule only when the statute is "devoid of explicit preemptive language").

**3.** The lone apparent exception in this context is the Third Circuit's opinion in *Pokorny,* which refrains from branding as "ambiguous" the Safety Act's express preemption clause. *See Pokorny,* 902 F.2d at 1120–21. Nevertheless, in its insistence on giving the Act's saving clause appropriate weight, and its observation that the preemption clause omits explicit reference to "common law", *id.,* the *Pokorny* opinion closely parallels the analysis reported by the Eleventh Circuit in *Taylor,* which *did* conclude that the express

clause was ambiguous. *See Taylor,* 875 F.2d at 824–25. If instead the Third Circuit found the express clause to be unambiguous, then that court perhaps implicitly resolved a dilemma which has vexed courts since *Cipollone:* namely, how to address a state provision which (1) lies outside the scope of an express preemption clause (and therefore should not be preempted), but (2) actually conflicts with the federal statutes (and therefore should be preempted). *See Cipollone,* —— U.S. at —— ——, 112 S.Ct. at 2633–34 (Scalia, J., dissenting in part); *see also Public Health Trust v. Lake Aircraft,* 992 F.2d 291, 295, n. 5 (11th Cir.1993) *and Cleveland v. Piper Aircraft Corp.,* 985 F.2d 1438, 1447, n. 20 (10th Cir.1993).

**4.** In the specific context of this litigation, *see National Solid Wastes Mgt. v. Killian,* 918 F.2d 671, 688 (7th Cir.1990) (Easterbrook, J., *dubitante* ), citing opinions declaring common law tort rules to be "auto safety 'standards' " for purposes of federal law.

by the regulation. While the federal regulation allowing a choice of safety features will protect the manufacturer from liability under state regulation or common law for exercising that choice, it would not exempt persons from other liability under common law. The saving clause, therefore, may preserve common law claims that a safety device, though in compliance with minimum federal standards, failed to meet higher performance requirements. *Perry v. Mercedes Benz of N. Am.,* 957 F.2d 1257, 1264–65 (5th Cir.1992). The clause might also allow state common law to require safety devices in addition to those mandated by federal regulations. *Buzzard v. Roadrunner Trucking,* 966 F.2d 777, 783–85 (3rd Cir.1992).

Thus it can fairly be argued that Congress intended the Safety Act's express preemption language to reach common law claims such as Plaintiff's. At best, since the express clause fails to provide a "reliable indicium" of Congress's preemptive intent, this Court concludes that the Safety Act impliedly preempts Plaintiff's claim.

## III.

This Court is not the first to wish for a clean slate from which to start its analysis of the Supremacy Clause and preemption issues. Indeed, judging from the relative absence of citations to past cases in *Cipollone,* the Supreme Court appears to have had the same notion. The intensely factual focus of the Supreme Court's analysis in *Cipollone* only reinforces the recognition that these issues must be considered on a case-by-case basis. This Court concludes that the instant case is indeed quite distinct from *Cipollone* and that the narrow lines drawn in that case do not directly apply here, particularly since the Supreme Court did not expressly overrule or discredit any prior cases.

■ The Supremacy Clause of the United States Constitution is a grant of congressional power. The Court must assume that when Congress acts, it exercises that power and enacts supreme laws. Unless Congress itself specifically and affirmatively limits the reach of its legislation, courts should presume that Congress is exercising its natural and supreme constitutional powers. It is the Court's job to determine the intended reach of Congress by enactment of the National Traffic and Motor Vehicle Safety Act of 1966. It should not begin this process by assuming that Congress intended its statute to have no reach at all.

This Court observes that, if anything, appellate courts have given too narrow an interpretation of the Supremacy Clause as it applies to the Safety Act. Attempts by Congress to define the scope of preemption do not eviscerate the supremacy of its law. If the federal regulations requiring a *choice* of safety features do not impliedly or expressly shield a manufacturer from liability for making the very choice mandated, then the Safety Act has little purpose or any reason for being. The Court will not presume that Congress intended to enact legislation which is so contradictory as to be a nullity. The Safety Act directed Defendant to make the *choice* for which it now faces liability. The Court will not presume that Congress intended such an unfair result from its regulation. Nor will the Court presume that Congress intended common law liability to persist concerning the very matters which, in the name of motor vehicle safety, it sought to allow and encourage by the Safety Act.

Plaintiff's cause of action seeking to impose liability for Defendant's failure to install airbags shall therefore be dismissed by the accompanying Order.

## ORDER

This matter is before the Court for consideration of Defendant's Motion for Partial Summary Judgment with respect to Plaintiff's common law cause of action seeking damages for Defendant's failure to install airbags in its 1988 Escort automobile. The Court having thoroughly reviewed this matter, having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion shall be GRANTED. That part of Plaintiff's claim described above shall accordingly be DISMISSED.