[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2000
THOMAS K. KAHN
CLERK

No. 99-8310

D.C. Docket No. 96-02356-1-CV-WBH

DWAYNE JAMES, JEWEL A. JAMES, et al.,

Plaintiffs-Appellants,

versus

MAZDA MOTOR CORPORATION, POPE CHEVROLET, INC., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(August 18, 2000)**

Before TJOFLAT, MARCUS and KRAVITCH, Circuit Judges.

TJOFLAT, Circuit Judge:

The sole issue presented in this appeal is whether the Supreme Court's decision in <u>Geier v. American Honda Motor Co., Inc.</u>, __ U.S. __, 120 S. Ct. 1913, __ L. Ed. 2d __ (2000), casts doubt on the viability of this circuit's decision in <u>Irving v. Mazda Motor Corp.</u>, 136 F.3d 764 (11th Cir.), <u>cert denied</u>, 525 U.S. 1018, 119 S. Ct. 544, 142 L. Ed. 2d 452, (1998). We hold that <u>Irving</u> is still good law.

I.

A.

Plaintiffs' decedent, Rosa J. Owolabi, was killed on February 16, 1995, when the car she was driving was forced off Interstate 75 in Atlanta, Georgia, by an unidentified driver,[1] and crashed into the freeway median. Owolabi's car was a 1994 Mazda Protegé, manufactured by defendant Mazda Motor Corporation, and distributed in the United States by defendant Mazda Motor of America (collectively "Mazda").[2] The 1994 Protegé employed a passive (automatic) two-

---

[1] Plaintiffs named the unidentified driver, "John Doe," as a defendant and asserted a negligence claim against "him." John Doe has never been identified, has never been served with process, and has not made an appearance in this lawsuit.

[2] Plaintiffs also named as defendant Tokai Rica Co., which manufactured the seat belt system used in the 1994 Protegé. For simplicity, we include Tokai Rica within the term "Mazda."

point shoulder belt, and a manual lap belt.[3]  Owolabi was not wearing her lap belt

at the time of the accident.

## B.

This wrongful death action began in the Superior Court of Fulton County,

Georgia;[4] Mazda removed it to the district court following the service of process.

The plaintiffs' complaint contained five counts.  Each count alleged that the 1994

Protegé's manual lap belt had been defectively designed and that Mazda had

negligently failed to warn consumers that the Protegé was dangerous unless the

manual lap belt was worn, and sought compensatory and punitive damages on a

different theory of recovery.[5]  Count one was based on strict tort liability; count

two on negligence; count three on breach of an express warranty; count four on

---

[3] The 1994 Protegé did not have an airbag.

[4] See Ga. Code Ann. § 51-4-2(a) (1999) ("The surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of the spouse or parent the full value of the life of the decedent, as shown by the evidence."); id § 51-4-5(b) ("[T]he personal representative of the deceased person shall be entitled to recover for the funeral, medical, and other necessary expenses resulting from the injury and death of the deceased person.").  The plaintiffs are Owolabi's children, Dwayne and Jewel James, and the administratrix of Owolabi's estate, Louise Carter.

[5] The complaint also presented a sixth "count," for punitive damages.  That count did not, however, assert a separate theory of liability; it simply incorporated the first five counts of the complaint.

breach of an implied warranty of fitness; and count five, a second negligence theory, on breach of a duty to notify consumers of the Protegé's defect.

After the parties joined issue, Mazda moved for summary judgment, claiming that plaintiffs' common law actions were preempted by Federal Motor Vehicle Safety Standard ("FMVSS") 208, 49 C.F.R. § 571.208 (1999) (enacted under the authority of the National Traffic and Motor Vehicle Safety Act of 1966, originally 15 U.S.C. § 1381 et seq. (1988 ed.), now codified as amended at 49 U.S.C. §§ 30101-30169 (1994 & Supp. II 1998)). The district court granted Mazda's motion.[6] We affirm.

II.

A.

---

[6] In its order granting Mazda summary judgment, the district court did not specifically discuss the pending negligence claim against John Doe, see supra n.1, nor had the court previously dismissed John Doe pursuant to Fed. R. Civ. P. 4(m) ("If service . . . is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant . . . ."). Since it is clear that John Doe was never in any sense "before the court," we do not consider his claim still pending for purposes of the final judgment rule, 28 U.S.C. § 1291 (1994); we construe the court's order granting defendants summary judgment to have disposed of plaintiffs' claim against him without prejudice.

4

In <u>Irving v. Mazda Motor Corp.</u>, 136 F.3d 764 (11th Cir. 1998), we encountered the theories of recovery the complaint presents in this case. The facts in <u>Irving</u> were that

> [p]laintiff Juliette Irving filed suit against Defendant Mazda Motor Corporation on behalf of her daughter, Bonita Irving. Bonita was killed in a single-car accident while driving a 1990 Mazda MX-6. After her daughter's death, Plaintiff filed this suit claiming that the seat belts in the MX-6 were defectively designed and that Mazda failed to warn consumers adequately of the risks of not utilizing all portions – particularly the manual lap belt portion – of the safety belt system.
> The safety belt system used in the Mazda MX-6 included a two-point passive shoulder restraint (automatic shoulder belt) with a manual lap belt. This kind of restraint system was one of three options provided to car manufacturers by FMVSS 208. Plaintiff contends the design represented by this option was defective.

We concluded under those facts that (1) Irving's common law "defective-design claim is not expressly preempted by [FMVSS 208]," <u>id.</u> at 768; (2) Irving's "suit against Defendants for their exercise of an option provided to Defendants by FMVSS 208 conflicts with federal law and, thus, is [impliedly] preempted," <u>id.</u> at 769; and (3) Irving's "failure-to-warn claim – which is, in this case, dependent on the preempted defective-design claim – was properly dismissed [because it is also preempted]," <u>id.</u> at 770.

In this case, the district court concluded, in its order granting Mazda summary judgment, that the passive two-point shoulder belt and manual lap belt in

the 1994 Protegé (which was a similar system to the one used in the 1990 Mazda MX-6) complied with FMVSS 208.  As a result, the court found the present case "virtually indistinguishable" from Irving, and on that basis granted Mazda summary judgment.

As an initial matter, we find no error in the court's conclusion that the passive two-point shoulder belt and manual lap belt complied with FMVSS 208.[7] Moreover, we agree with the district court that this case is on all fours with Irving.[8] If Irving is still good law, plaintiffs' appeal fails.  Our only task on appeal, therefore, is to determine if Irving is good law.  We conclude that it is.

B.

First, plaintiffs argue that Irving was not good law when it was decided, because it conflicted with prior circuit precedent, namely Myrick v. Freuhauf Corp., 13 F.3d 1516 (11th Cir. 1994), aff'd 514 U.S. 280, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995), and Doyle v. Volkswagenwerk Aktiengelellschaft, 114 F.3d

---

[7] Referring to the plaintiffs' negligent failure to warn claim, the district court, in its order granting Mazda's motion for summary judgment, said this: "Plaintiffs do not allege that the Protegé failed to comply with federal law requirements for warning label placement regarding proper seat belt use."

[8] The district court held that all of the claims contained in the five counts of plaintiffs' complaint stand or fall on proof that the Protegé's safety belt system was defective in the first instance.  We agree: if plaintiffs' defective design claim is preempted, so too are these claims.

6

1134 (11th Cir. 1997) (Doyle II). See Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000) ("[W]here two prior panel decisions conflict we are bound to follow the oldest one."). Second, plaintiffs argue that the Supreme Court's decision in Geier, __ U.S. __, 120 S. Ct. 1913, abrogates Irving's implied preemption analysis. We consider these two arguments in order.

1.

Plaintiffs argue that the Irving court's analysis of implied preemption was incorrect because it conflicted with Myrick v. Freuhauf Corp., 13 F.3d 1516. In Myrick, 13 F.3d at 1518, we concluded that "a common law tort for failure to install anti-lock brakes in a tractor-trailer is [not] pre-empted by the National Traffic and Motor Vehicle Safety Act." In doing so we held that "where . . . there is an express pre-emption provision, which constitutes a reliable indicium of congressional intent, implied pre-emption analysis has no place." Id. at 1523. On writ of certiorari, the Supreme Court affirmed the judgment, but disagreed with the reasoning; it found our implied preemption analysis "without merit." Freightliner Corp. v. Myrick, 514 U.S. at 287, 115 S. Ct. at 1487. The Irving court recognized this; in its discussion of implied preemption it noted that when "the Supreme Court reviewed Myrick on appeal . . .[it] affirm[ed] the outcome, [but] stressed that

7

implied preemption is possible despite the presence of an express preemption clause." Irving, 136 F.3d at 767 n.1. In other words, the Irving court engaged in the correct preemption analysis.

As a second argument, plaintiffs contend that Doyle II, 114 F.3d 1134, conflicts with Irving. This is not correct. In Doyle II, plaintiff was injured while driving a 1989 Volkswagen Jetta, which had a passive shoulder belt but no lap belt. The district court granted defendant Volkswagenwerk Aktiengelellschaft (which manufactured the 1989 Jetta) summary judgment on the ground that the Jetta "complied with the applicable federal standards, notwithstanding the absence of a lap belt" and that "Georgia law . . . does not hold automobile manufacturers to a higher standard than federal requirements." Id. at 1135. The only question on appeal, therefore, was whether this was a correct statement of Georgia law (based on a certified question to the Georgia Supreme Court, see Doyle v. Volkswagenwerk Aktiengelellschaft, 81 F.3d 139 (11th Cir. 1996) (Doyle I), we concluded that it was not). Since "the district court found it unnecessary to reach the preemption issue," we did not consider preemption. Doyle II, 114 F.3d at 1135.[9] Doyle II, therefore, left open the question that we decided in Irving.

---

[9] On remand, the district court found that Doyle's claims were preempted. Doyle v. Volkswagenwerk Aktiengesellschaft, No. 91-CV-1296A-JEC (N.D. Ga. Sept 29, 1999). The parties appealed to this court, and on June 30, 2000, we granted the parties' joint motion to dismiss the appeal with prejudice. Doyle v. Volkswagenwerk Aktiengesellschaft, No. 98-9453 (11th Cir. June

8

2.

Since the district court's grant of summary judgment, the Supreme Court has decided <u>Geier v. American Honda Motor Co.</u>, __ U.S. __, 120 S. Ct. 1913, __ L. Ed. 2d __ (2000). <u>Geier</u> is a so-called "no airbag case" in which the plaintiff sued an automobile manufacturer for failure to install an airbag. The Supreme Court held that this claim is not expressly preempted by FMVSS 208, but is impliedly preempted by FMVSS 208 because a common law action based on the failure to install an airbag "actually conflicts with FMVSS 208." <u>Id.</u> at __, 120 S. Ct. at 1922. In supplemental briefing to this court, plaintiffs argue that "<u>Geier</u> substantially undermines the holding in <u>Irving</u> . . . on issues of preemption."

We are not sure that plaintiffs have read the same <u>Geier</u> opinion that we have read. The Supreme Court made clear that, despite a savings clause in the National Traffic and Motor Safety Act, 15 U.S.C. § 1397(k) (1988 ed.) (now codified at 49 U.S.C. § 30103(e) (1994)), courts should apply normal implied preemption principles to determine if a state common law action "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>Id.</u> at __, 120 S. Ct. at 1921 (quoting <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67, 61 S.

---

30, 2000) (unpublished).

Ct. 499, 404, 85 L. Ed. 581 (1941)). This is exactly the analysis used by the Irving

court:

> The existence of an express preemption clause does not necessarily preclude the presence of implied preemption. Freightliner Corp. v. Myrick, 514 U.S. 280, 286-90, 115 S. Ct. 1483, 1487-88, 131 L. Ed. 2d 385 (1995). Thus, if Plaintiff's state law claim conflicts with FMVSS 208 or if her claim would hinder Congress's objectives in passing the Act, the state law will be preempted.

Irving, 136 F.3d at 768. Since Irving is not in conflict with Geier, or any of our

previous decisions, we are bound to follow it. The district court, therefore,

correctly granted Mazda summary judgment.


III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.